FILED

2022 May-25  PM 01:31
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | |
|---|---|
| **KELLIE LAVONNE WALTERS,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| **v.** } | **Case No.: 4:21-cv-01348-ACA** |
| } | |
| **COMMISSIONER,** } | |
| **SOCIAL SECURITY** } | |
| **ADMINISTRATION,** } | |
| } | |
| **Defendant.** } | |

## <u>MEMORANDUM OPINION</u>

Plaintiff Kellie Lavonne Walters appeals the decision of the Commissioner of Social Security denying her claims for a period of disability, disability insurance benefits, widow's disability insurance benefits, and supplemental security income. Based on the court's review of the administrative record and the parties' briefs, the court **WILL AFFIRM** the Commissioner's decision.

## I.    PROCEDURAL HISTORY

Ms. Walters applied for a period of disability, disability insurance benefits, widow's disability insurance benefits, and supplemental security income alleging that her disability began on June 30, 2018.  (R. at 199–201).  The Commissioner initially denied Ms. Walters' claims and her request for reconsideration.  (*Id.* at

227–58).  Ms. Walters requested a hearing before an Administrative Law Judge ("ALJ") (*Id.* at 204–05).  After holding a hearing (r. at 89–114), the ALJ issued an unfavorable decision (*id.* at 48–74).  The Appeals Council denied Ms. Walters' request for review (*id.* at 1–7), making the Commissioner's decision final and ripe for the court's judicial review.  *See* 42 U.S.C. §§ 405(g), 1383(c).

## II.    STANDARD OF REVIEW

The court's role in reviewing claims brought under the Social Security Act is a narrow one.  The court "must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards."  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quotation marks omitted).  "Under the substantial evidence standard, this court will affirm the ALJ's decision if there exists such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (quotation marks omitted).  The court may not "decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [ALJ]."  *Winschel*, 631 F.3d at 1178 (quotation marks omitted).  The court must affirm "[e]ven if the evidence preponderates against the Commissioner's findings."  *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004) (quotation marks omitted).

Despite the deferential standard for review of claims, the court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Henry*, 802 F.3d at 1267 (quotation marks omitted). Moreover, the court must reverse the Commissioner's decision if the ALJ does not apply the correct legal standards. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145–46 (11th Cir. 1991).

## III.   ALJ'S DECISION

To determine whether an individual is disabled, an ALJ follows a five-step sequential evaluation process. The ALJ considers:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178.

Here, the ALJ determined that Ms. Walters had not engaged in substantial gainful activity since her June 30, 2018, alleged onset date. (R. at 54). The ALJ found that Ms. Walters' lumbar disc disease, stenosis with reported radicular symptoms, and right middle and index finger neuropathy were severe impairments but that her hypertension, history of migraine headaches and syncope, decreased

visual acuity, acid reflux disease, thoracic nodules, vitamin deficiency, grief/depressive disorder, anxiety disorder, and obesity were non-severe impairments. (*Id.* at 54–56). The ALJ then concluded that Ms. Walters does not suffer from an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (*Id.* at 56).

After considering the evidence of the record, the ALJ determined that Ms. Walters had the residual functional capacity to perform light work as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b) except that she had some additional physical, postural, and environmental limitations. (R. at 56). Based on this residual functional capacity and the testimony of a vocational expert, the ALJ found that Ms. Walters was unable to perform any past relevant work. (*Id.* at 67). But the ALJ concluded that jobs existed in significant numbers in the national economy that Ms. Walters could perform, including furniture rental clerk, counter clerk, and usher. (*Id.* at 68). Accordingly, the ALJ determined that Ms. Walters had not been under a disability, as defined in the Social Security Act, from her alleged June 30, 2018, alleged onset date through the date of the decision. (R. at 68).

## IV.   DISCUSSION

Ms. Walters argues that the court should reverse and remand the Commissioner's decision for two reasons: (1) because the Appeals Council erroneously failed to consider new evidence, and (2) because substantial evidence does not support the ALJ's decision when new evidence is considered.  (Doc. 15 at 15–24).  The court examines each issue in turn.

### 1.   New Evidence Before the Appeals Council

Ms. Walters' first argument is that the Appeals Council erred when it denied review without considering Dr. Victoria Masear's physical capacities evaluation or Dr. June Nichols' psychological evaluation based on a finding that these medical records were not chronologically relevant.  (*Id.* at 15–20).[1]

"'With a few exceptions, a claimant is allowed to present new evidence at each stage of the administrative process,' including before the Appeals Council." *Washington v. Soc. Sec. Admin., Comm'r*, 806 F.3d 1317, 1320 (11th Cir. 2015) (quoting *Ingram v. Soc. Sec. Admin.*, 496 F.3d 1253, 1261 (11th Cir. 2007)).  The Appeals Council must review evidence that is new, material, and chronologically relevant.  *Ingram*, 496 F.3d at 1261.   The court reviews *de novo* whether

---

[1] Ms. Walters submitted other additional evidence that the Appeals Council either considered but found did not change the administrative result or that the Appeals Council did not consider.  However, Ms. Walters does not appeal those determinations.

5

supplemental evidence is new, material, and chronologically relevant. *Washington*, 806 F.3d at 1321.

While her case was pending before the Appeals Council, Ms. Walters submitted a physical capacities evaluation from Dr. Masear and psychological evaluation from Dr. Nichols for the Appeals Council's consideration. (R. at 13–17, 22). Both evaluations post-date the ALJ's decision. (*See id.* at 13–17, 22, 60). The Appeals Council explained that the ALJ decided Ms. Walters' case through March 3, 2021, and that the additional evidence "does not relate to the period at issue," and therefore, "it does not affect the decision about whether" Ms. Walters was disabled beginning on or before March 3, 2021. (*Id.* at 2).

As best the court can tell, Ms. Walters argues that the Appeals Council should have considered Dr. Masear's physical capacities evaluation and Dr. Nichols' psychological evaluation because the evidence is chronologically relevant. (Doc. 9 at 15). Evidence is chronologically relevant if it "relates to the period on or before the date of the [ALJ's] hearing decision." 20 C.F.R. §§ 404.970(a)(5), 416.1470(a)(5). A medical evaluation conducted after the ALJ's decision may be chronologically relevant if it pertains to conditions that pre-existed the ALJ's opinion. *Washington*, 806 F.3d at 1322–23 (citing *Boyd v. Heckler*, 704 F.2d 1207, 1211 (11th Cir. 1983)). For example, in *Washington*, a consultative psychologist provided an opinion regarding a claimant's mental

condition.  *Id.* at 1319.  Although the psychologist examined the claimant several months after the ALJ's decision, the Eleventh Circuit found that the opinion was chronologically relevant because the examiner indicated in his report that he based his opinion on the claimant's reports that "he had experienced hallucinations throughout this life" and on the state of the claimant's cognitive abilities before the ALJ issued a decision.  *Id.* at 1322.  In addition, the consultative examiner reviewed the claimant's "mental health treatment records from the period before the ALJ's decision reflecting that [the claimant] repeatedly reported experiencing auditory and visual hallucinations."  *Washington*, 806 F.3d at 1322.

Dr. Masear's physical capacities evaluation is not similar to the new evidence in *Washington*.  Dr. Masear completed a physical capacities form six weeks after the ALJ issued his decision.  (R. at 22).  Dr. Masear, one of Ms. Walters' treating physicians, opined that Ms. Walters had various limitations from stiffness and nerve injuries to her right index and long fingers and that those limitations had existed since the alleged disability onset date of June 30, 2018. (*Id.*).  Still, nothing on the form demonstrates that Dr. Masear relied on reports that Ms. Walters was experiencing disabling symptoms during the relevant time period or that she reviewed treatment records that concern Ms. Walters' condition before the date of the ALJ's decision.  (*See id.*).  Because Dr. Masear's physical capacities form "was not chronologically relevant, the Appeals Council was not required to

7

consider it."  *See Hargress v. Soc. Sec. Admin., Comm'r*, 874 F.3d 1284, 1291 (11th Cir. 2017).

Whether Dr. Nichols' psychological evaluation is chronologically relevant is a closer call.  The court notes that Dr. Nichols reviewed materials concerning Ms. Walters' medical history during the relevant period.  (R. at 13–14).  Some of those records indicate that Ms. Walters suffered from anxiety and depressive disorder in June and September 2020, during the relevant period.  (*Id.*).  Moreover, Dr. Nichols relied on statements from Ms. Walters about how she began having panic attacks shortly after her husband died in 2020 and how his death impacted her mood.  (*Id.*).  This makes Dr. Nichols' report more like the new evidence in *Washington*.  Even if Dr. Nichols' evaluation is chronologically relevant, the Appeals Council did not err in failing to consider it because the evaluation is not material.

Under the current regulations and the regulations in place at the time Ms. Walters filed her claims, evidence is material if there is a "reasonable probability that the additional evidence would change the outcome of the decision."  20 C.F.R. §§ 404.970(a)(5), 416.1470(a)(5)).  Relying on Eleventh Circuit case law interpreting previous versions of the regulations, Ms. Walters' brief contends that there must be a "'reasonable *possibility* that the new evidence would change the administrative result.'"  (Doc. 9 at 19, quoting *Hyde v. Bowen*,

823 F.2d 456, 459 (11th Cir. 1987), emphasis in Doc. 9).   Ms. Walters has not argued or shown why the current regulations do not control.   However, any distinction between the two standards is one of form over function.   On at least one occasion in evaluating a case under the previous version of the regulations, the Eleventh Circuit used the terms "reasonable possibility" and "reasonable probability" interchangeably.   *See Washington*, 806 F.3d at 1321–22.   This suggests that any difference between the meaning of the two terms is not significant.

Ms. Walters' brief provides no substantive analysis of why or how Dr. Nichols' psychological evaluation would change the administrative result nor does it even summarily state that the evaluation meets the materially standard. (*See generally id.* at 15–20).   And based on the court's independent evaluation of the record, the court finds that Dr. Nichols' evaluation is not material.   The extreme limitations that Dr. Nichols included in her evaluation are not supported by other record evidence.   For example, as the ALJ explained, Ms. Walters' treatment record does not indicate any formal inpatient or outpatient mental health treatment.   She has no psychiatric hospitalizations and did not participate in any regular outpatient counseling.   Ms. Walters' primary care providers prescribed appropriate anti-depressants in the months following her husband's death, and on multiple occasions afterwards, her physicians noted that her mood and affect were

appropriate which indicates the medication helped her symptoms.  (R. at 62–62;

*see also* r. at 414, 421, 429–30, 511–21, 702).

Accordingly, when considered against the record as a whole, Dr. Nichols'

evaluation does not create a reasonable possibility or reasonable probability that

the ALJ would have reached a different conclusion.  Thus, Dr. Nichols' report is

not material, and the Appeals Council did not err in failing to consider it.

2.    Substantial Evidence

Ms. Walters' second argument is that substantial evidence does not support

the Commissioner's decision when the new evidence submitted to the Appeals

Council is considered.  (Doc. 9 at 20–24).

In the section of her brief addressing this argument, Ms. Walters recites the

general rule that claimants generally may present new evidence at each stage of the

administrative proceedings and that the Appeals Council must consider new,

material, and chronologically relevant evidence.  (*Id.* at 20–22).

The brief then states that "the submissions describe physical and

psychological symptoms manifested by [Ms.] Walters that, due to their severity,

could bear on her condition during the relevant period," and therefore, they are

material because "there is a 'reasonable probability' that the evidence, if credited,

would persuade the ALJ in this case to reverse its decision."  (*Id.* at 22).

Ms. Walters' vague reference to unidentified "submissions" does not give the court

or the Commissioner any guidance about Ms. Walters' argument on this issue aside from the fact that she asserts the existence of an error. *See Singh v. U.S. Att'y Gen.*, 561 F.3d 1275, 1278 (11th Cir. 2009) ("[A]n appellant's simply stating that an issue exists, without further argument or discussion, constitutes abandonment of that issue and precludes our considering the issue . . . ."); *see also Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) ("We have long held that an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority.").

But even if it did, the fact that some unidentified medical records might relate to Ms. Walters' condition during the relevant period alone is not sufficient to show that they have a reasonable probability of changing the administrative result. If that were the case, any chronologically relevant evidence would always necessarily warrant remand. That is not—and cannot be—the appropriate standard for materiality.

## V.   CONCLUSION

Substantial evidence supports the ALJ's denial of Ms. Walters' applications for a period of disability, disability insurance benefits, widow's disability insurance benefits, and supplemental security income. Therefore, the court **WILL AFFIRM** the Commissioner's decision.

The court will enter a separate order consistent with this memorandum opinion.

**DONE** and **ORDERED** this May 25, 2022.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE